UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Robert Iannucci,

                        Plaintiff,              CV-02-6135 (CPS)

       - against -                              MEMORANDUM OPINION
                                                AND ORDER
City of New York,

                        Defendant.

----------------------------------------X

SIFTON, Senior Judge.


       Plaintiff Robert Ianucci ("Ianucci") brings this action

against Defendant City of New York ("City") to recover damages

for the City's alleged failure to prevent New York City police

officers from parking their vehicles on sidewalks, curbs, and

driveways on or adjacent to plaintiff's properties, causing

damage and depriving plaintiff of the use of his property.[1]

_____

[1] Plaintiff filed his original complaint on November 19, 2002. On June
13, 2003, defendant City moved to dismiss the complaint for failure to state a
claim upon which relief could be granted, alleging that each cause of action
was barred by prescription, that each cause of action was time-barred by CPLR
214, and that each cause of action was barred by laches. This Court denied the
motion, and denied defendant's subsequent motion for reconsideration of that
decision. On January 13, 2004, plaintiff filed his First Amended Complaint,
in which he added that he purchased property at 325 Gold Street on November
20, 2002 and that he purchased property at 173-175 Johnson Street ("Johnson
Street property") on November 20, 2003. He stated that he acquired all the
rights and legal causes of action for the Johnson Street property, going
forward from November 20, 2000. *See* First Amended Complaint ¶ 10. As part of
his 325 Gold Street purchase, "[plaintiff] acquired all the rights and legal
causes of action possessed by the seller, The Garden City Company, relating to
and regarding 325 Gold Street as of the date [Garden City] acquired 325 Gold
Street." *Id*. at ¶ 11.
       Thereafter, both parties made motions for summary judgment. On January
3, 2006, I denied the motions, rejecting defendant's argument that it was
entitled to summary judgment based on the affirmative defense of prescription
because the City vehicles' illegal parking was a public nuisance not entitled

Pursuant to 42 U.S.C. § 1983, plaintiff alleges that the City
violated his procedural and substantive due process rights under
the Fourteenth Amendment.[2]  Presently before the Court is
defendant's motion for partial summary judgment, seeking
dismissal of plaintiff's claim for damages based on the
assignment of claims related to property at 325 Gold Street.  In
November 2002, plaintiff bought this property from its prior
owner, who assigned all claims related to the property to
plaintiff.  For the reasons set forth below, defendant's motion
is granted.

**Background**

The following facts are drawn from the parties' submissions
in connection with this motion.  Disputes are noted.

Plaintiff Ianucci is a resident of the State of New York and
owns several buildings located on Gold and Johnson streets in
Brooklyn, New York.  The City of New York is a municipal
corporation organized under the laws of the State of New York.

In 1982, plaintiff purchased two properties located at 309
Gold Street and 171 Johnson Street in Brooklyn, New York.  In

---

to any prescriptive right.  I rejected plaintiff's motion because of factual
issues related to whether there was a municipal custom or policy to permit
illegal parking.  On April 19, 2006, I denied defendant's motion for
reconsideration of my January 3 decision.

[2] Plaintiff therefore alleges two separate claims: (1) violation of his
procedural due process rights under the Fourteenth Amendment and (2) violation
of his substantive due process rights under the Fourteenth Amendment.

1983, plaintiff purchased property located at 311, 313, and 315
Gold Street (which is also known as 167-169 Johnson Street).
Defendant's Opposition Memorandum, p. 2.

In April 2001, plaintiff began leasing office space at 325
Gold Street, a ten story commercial building which was then owned
by the Garden City Company ("Garden City"). Thereafter, Garden
City was under the oversight of the U.S. Bankruptcy Court and was
put up for sale by a court appointed trustee. *See* Defendant's
Local Rule 56.1 Statement, ¶ 6; Def. Exh. 1, *For Sale or Not for
Sale?*, The Garden City News, April 20, 2001. On November 20,
2002, plaintiff purchased the 325 Gold Street property from
Garden City. As part of his purchase of the 325 Gold Street
property, Garden City assigned to plaintiff claims relating to
325 Gold Street between 1983, when Garden City acquired 325 Gold
Street, until November 20, 2002, the date Garden City conveyed
the property to plaintiff. Around this time, plaintiff also
purchased property at 173 and 175 Gold Street.

Plaintiff alleges that since 1983, New York City vehicles,
such as police patrol cars, Fire Department cars, Emergency
Medical Services trucks, Department of Transportation trucks, and
private vehicles with New York City parking placards
(collectively "City vehicles"), have parked and double-parked
illegally on the sidewalks, curbs, and streets abutting

plaintiff's properties on a daily basis.[3]  According to

plaintiff, "[t]he double parked cars impede the flow of traffic,"

including pedestrian traffic, "and thus block access to

plaintiff's building."  Plaintiff's Opposition Memorandum, p. 6.

"The cars blocking the loading bays prevent businesses from

sending or receiving deliveries."  *Id.*  Lastly, plaintiff states,

"[t]his image of rows of double parked cars, and cars illegally

parked on the sidewalks creates a negative image that detracts

from the plaintiff's ability to rent his properties in accordance

with the prevailing values of the area."  *Id.*

Plaintiff's properties are located within the "self-

enforcement" zone of the 84th Precinct, which means that the

police in that precinct are responsible for enforcing traffic and

parking laws in that area. (Accardi Dep. at 14-15; Sferrazza Dep.

13-14).  Approximately 270 officers are assigned to the 84th

Precinct. (Sferrazza Dep. at 7).  Sergeant Edward Accardi of the

84th Precinct, who served as the precinct's Traffic Safety

Supervisor, testified at his deposition that although there was

no official policy within the 84th Precinct with regard to the

enforcement of parking and traffic regulations in the area,

efforts have been made by Sergeant Accardi and other precinct

commanders to curb illegal parking by City vehicles, including

---

[3] Defendant denies knowledge sufficient to form a belief as to the truth
of this allegation.  Amended Answer ¶ 2.

routine ticketing, writing of summonses, and towing of the illegally-parked vehicles. (Accardi Dep. at 18-20, 40-41). Although Sergeant Accardi "felt [they] got compliance with members of the 84th," he acknowledged that illegal parking continued to be a frequent problem. (Accardi Dep. at 36-44). The police department does not have parking facilities for City vehicles apart from a fenced lot located on the north side of Tillary Street, which accommodates approximately fifty cars. (Accardi Dep. 17, 44; Sferrazza Dep. at 7).

The illegal parking caused the curbs and sidewalks in front of the properties to become cracked and damaged, requiring significant repair. On one occasion, the City of New York assessed plaintiff for the repair of the sidewalks adjacent to his property in the amount of $60,000. Ianucci Affidavit, dated Feb. 16, 2007, ¶ 22.

Plaintiff states that since 1982, he notified the City "on multiple occasions" that the City's official vehicles and City Placard vehicles were parking on the sidewalks and curbs in front of the properties, and that the vehicles were double parking and blocking the driveways to the premises. Despite his complaints, City vehicles continued to park illegally on the curbs and sidewalks abutting plaintiff's properties. In 2005, plaintiff sold all properties listed above, except for the 325 Gold Street property.

In November 2002, plaintiff commenced this Section 1983 action seeking monetary damages and attorney's fees for the alleged violation of his procedural and substantive due process rights. Plaintiff also seeks to recover damages that Garden City, the prior owner, allegedly suffered with respect to the 325 Gold Street property during the period of Garden City's ownership, from 1983 through November 2002. Approximately 78% of plaintiff's claim of lost rents arises from the 325 Gold Street property for the period during which Garden City owned the property.[4]

## Discussion

Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, which grants district courts original jurisdiction over civil actions commenced by any person "to redress the deprivation, under color of State law, . . . custom or usage, of any right, privilege or immunity secured by the Constitution or by any Act of Congress providing for equal rights of citizens . . . ," and 42 U.S.C. § 1983.[5]

---

[4] The 78% amounts to approximately $7,940,000. Plaintiff seeks to recover a total of $10,179,703 in lost rents. *See* Defendant's Memorandum, p. 2.

[5] 42 U.S.C. § 1983 provides in relevant part that

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory . . . subjects, or causes to

Summary Judgment Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Village of East Hills*, 320 F.3d 110, 117 (2d Cir. 2003).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences are to be construed in the light most favorable to the non-moving party, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990).

Standing Requirement

Defendant City argues that plaintiff lacks standing to sue based on the assignment of claims relating to the premises at 325

---

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Gold Street.


*Law*

Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing implicates two questions:

> First, whether the plaintiff-respondents allege 'injury in fact,' that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether as a prudential matter, the plaintiff-respondents are proper proponents of the particular legal rights on which they base their suit.

*Singleton v. Wulff*, 428 U.S. 106, 112 (1976). The Supreme Court has held that "[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." *Id*. at 113 (1976) (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)) (internal quotations omitted). Similarly, it is a "well-settled principle that a Section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990), *quoted in McKelvie v. Cooper*, 190 F.3d 58, 64 (2d Cir. 1999). *See also McCloud v. Delaney*, 677 F.Supp. 230, 232 (S.D.N.Y. 1988) ("A party may not assert a civil rights claim on behalf of another, each party must establish that he or she was personally deprived of rights or privileges secured by the

Constitution."); *Sterngass v. Bowman*, 563 F.Supp. 456, 459 (S.D.N.Y. 1983) ("One may not sue under 42 U.S.C. § 1983 for deprivation of another's constitutional rights").  Courts have also denied standing to litigants who claim standing based on an assigned economic interest.  *See, e.g., Carter v. Romines*, 560 F.2d 395, 396 n.1 (8th Cir. 1977).[6]

Courts have recognized "a limited exception," *Georgia v. McCollum*, 505 U.S. 42, 55 (1992), to the rule against third party standing where the third party has made "two additional showings."  *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004). "First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right." *Id* (citing *Powers v. Ohio,* 499 U.S. 400, 411 (1991)); *see also Singleton*, 428 U.S. at 112 ("[T]he relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter."); *Griswold v. Connecticut*, 381 U.S. 479 (1965) (court permitted physician defendant to assert privacy rights of married persons physician advised).  "Second, we have considered

---

[6] In *Carter v. Romines*, the Court of Appeals

reject[ed] the notion that appellant can have standing through an assigned economic interest in the outcome of the litigation or simply because he seeks money damages for past wrongs inflicted upon his assignor.  Civil rights damages may not be bought and sold in the market place; appellant must bring himself under one of the exceptions to the rule of standing or be denied access to the federal courts.

*Carter v. Romines*, 560 F.2d 395, 396 n.1 (8th Cir. 1977).

whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004) (citing *Powers v. Ohio,* 499 U.S. 400, 411 (1991)); *see also Singleton v. Wulff*, 428 U.S. 106, 115-16 (1976) (stating that the court considers "the ability of the third party to assert his own right. Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply."[7]). The Supreme Court "has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Kowalski*, 543 U.S. at 130 (quoting *Warth v. Seldin*, 422 U.S. 490, 510 (1975) and citing *Doe v. Bolton*, 410 U.S. 179 (1973); *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Barrows v. Jackson*, 346 U.S. 249 (1953)) (emphasis in original). "Beyond these examples,"

---

[7] The Court stated that those reasons are that, first, "it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not" and that, second,

> third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of stare decisis.

*Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (citing *Baker v. Carr*, 396 U.S. 186 (1962), which held that standing requirement aimed at "assur(ing) that concrete adverseness which sharpens the presentation of (the) issues upon which the court so largely depends," and also citing *Holden v. Hardy*, 169 U.S. 366 (1898), which held that the assertion of third parties' rights would come with "greater cogency" from the third parties themselves) (internal quotations omitted).

however, the Supreme Court "[has] not looked favorably upon third-party standing." *Kowalski*, 543 U.S. at 131 (citation omitted).

*Application*

There is no dispute that with respect to the 325 Gold Street property, plaintiff seeks to assert third-party standing. Therefore, plaintiff must meet the "close relationship" and "hindrance" criteria to fall within the exception of the standing rule. *See Kowalski*, 543 U.S. at 131.

1. "Close Relationship"

Plaintiff argues that he meets the "close relationship" criterion because "[f]irst, there was an initial relationship which was born as owners of similarly situated property and property rights.  Second, the plaintiff was a tenant of 325 Gold Street beginning in April 2001."  Plaintiff's Opposition Memorandum, p. 14.[8]

For the period between 1983 and April 2001, when plaintiff

_____

[8] Under its leasehold agreement with Garden City, plaintiff argues, plaintiff and Garden City worked together for the betterment of their businesses and the property located at 325 Gold Street . . . ."  Plaintiff's Opposition Memorandum, p. 14.  Plaintiff's and Garden City's "substantial relationship," plaintiff states, was "one in which their rights and property concerns were violated by the very same illegal action of the defendants." *Id*.  Plaintiff states that "the parties have an identical interest in the case, stemming from their identical injuries relating to the same property which for a period of time happened simultaneously to one another." *Id*.

was neither an owner nor a tenant of the 325 Gold Street
property, plaintiff's relationship with Garden City was not
sufficiently close to meet the first criterion of the standing
rule exception.  Although the rights of both plaintiff and Garden
City were allegedly violated by the City's parking practices,
plaintiff cannot demonstrate how, during this period, the City's
conduct against plaintiff brought about constitutional violations
with respect to Garden City.  The City's allegedly illegal
conduct against plaintiff's property during this period does not
necessarily mean that that same conduct would similarly affect
Garden City's property.

Regarding the period between April 2001 and November 2002,
when plaintiff was a tenant of the 325 Gold Street property, the
City's parking practices did allegedly cause both plaintiff and
Garden City deprivations of constitutional rights with respect to
that property.  As a tenant, plaintiff did not suffer lost rent,
the injury about which plaintiff largely complains, but plaintiff
has alleged that he suffered damages arising out of impeded
traffic of automobiles and pedestrians and the inability to send
and receive deliveries.  Accordingly, for this period, plaintiff
meets the first criterion for obtaining third-party standing.[9]

_____

[9] However, the law is silent on whether plaintiff, assuming he also
meets the second criterion to obtain standing, may seek the monetary damages
Garden City allegedly suffered as a result of alleged constitutional
deprivations.  Cases that have recognized third-party standing on the basis
that the challenged restriction or policy affected third parties as well as

2.  "Hindrance"

With respect to the second criterion of the standing rule
exception, plaintiff has not demonstrated that Garden City could
not itself assert the claim for damages related to the 325 Gold
Street property.  The only evidence cited by plaintiff in
relation to Garden City's alleged inability to sue is an article
published in a local publication, *The Garden City News*.  The
article dated April 20, 2001 reports that the "Garden City
Company . . . is being offered for sale in order to pay the debts
of one of its bankrupt shareholders . . . ." *For Sale or Not for
Sale?*, The Garden City News, April 20, 2001, p. 1.  The article
reported that the shareholder, Lawrence Kassover, "had filed for
personal bankruptcy in 1998, and his holdings are being liquated
by a trust . . . ." *Id.*  Kassover is alleged to have held only
5.25% of the company.  Plaintiff has offered no evidence showing
that the company was in fact sold and whether the company was
unable to bring a claim on its own behalf, either after the sale
or during the period during which the alleged violations by the
City occurred.  In any event, the Supreme Court has found that
indigent parties are not precluded from advancing their
constitutional rights.  *See Kowalski v. Tesmer*, 543 U.S. 125,
131-32 (2004) (noting that "[i]t is uncontested that an indigent

_____

the litigant do not address this issue.  Because I find that plaintiff fails
to meet the second criterion, I need not address this question.

denied appellant counsel has open avenues to argue that denial deprives him of his constitutional rights" and that lack of representation is not "the type of hindrance necessary to allow another to assert the indigent defendants' rights").  More fundamentally, plaintiff has not shown how prosecuting his suit on the basis of third-party standing "is necessary to insure protection of the rights asserted." *Warth v. Seldin*, 422 U.S. 490, 510 (1975).  The rights plaintiff seeks to assert on behalf of Garden City are the same rights plaintiff asserts on his own behalf.  Accordingly, plaintiff's claim for damages arising from defendant's alleged conduct in relation to the property at 325 Gold Street for the period of 1983 to November 2002 is dismissed and defendant's motion for partial summary judgment is granted.


## Conclusion

For the foregoing reasons, defendant's motion for partial summary judgment is granted.

The clerk is directed to transmit a copy of the within to the parties and to the Magistrate Judge.

SO ORDERED.

Dated :    Brooklyn, New York
           March 21, 2007


                    /s/ Charles P. Sifton (electronically signed)
                    United States District Judge